[Home] [Databases] [World Law] [Multidatabase Search] [Help] [Feedback]

# England and Wales High Court (Administrative Court) Decisions

**You are here:** BAILII >> Databases >> England and Wales High Court (Administrative Court) Decisions >> The United States of America, R (on the application of) v Nirvana [2018] EWHC 706 (Admin) (15 March 2018)
URL: *http://www.bailii.org/ew/cases/EWHC/Admin/2018/706.html*
Cite as: [2018] EWHC 706 (Admin)

[New search] [Printable RTF version] [Help]

**Neutral Citation Number: [2018] EWHC 706 (Admin)**
Case No: CO/4143/2017

**IN THE HIGH COURT OF JUSTICE**
**QUEEN'S BENCH DIVISION**
**DIVISIONAL COURT**

Royal Courts of Justice
Strand, London, WC2A 2LL
15/03/2018

B e f o r e :

**LORD JUSTICE LEGGATT**
**and**
**MR JUSTICE HOLGATE**

---

**Between:**

**THE QUEEN ON THE APPLICATION OF THE UNITED STATES OF AMERICA** — **Appellant**

**- and -**

**GYPSY NIRVANA** — **Respondent**

---

**Mr Hall QC and Mr Smith (instructed by the Crown Prosecution Service) appeared on behalf of the Appellant**
**Mr Blaxland QC and Mr Cooper (instructed by Saunders) for the Respondent**
**Hearing date: 15 March 2018**

---

**HTML VERSION OF JUDGMENT**

---

Crown Copyright ©

**MR. JUSTICE LEGGATT:**

1. The government of the United States of America has requested the extradition from this country of Mr Gypsy Nirvana to face criminal prosecution in Maine on a four count indictment returned by a Grand Jury on 14 August 2013 charging Mr Nirvana with offences of: (1) conspiracy to traffic marijuana; (2) conspiracy to import marijuana; (3) conspiracy to export marijuana; and (4) conspiracy to commit money laundering – in each case contrary to the laws of the United States.

2. Following an extradition hearing, the District Judge, for reasons given in a ruling dated 30 August 2017, refused the request for extradition and discharged Mr Nirvana. The essential reason for that decision was that the conduct of which Mr Nirvana is accused in the United States consists of trafficking, importing and exporting marijuana seeds and related money transactions, and that such conduct does not constitute a criminal offence under UK law. A necessary requirement for extradition was, therefore, not satisfied. The United States was given leave to appeal against that decision. This is the hearing of the appeal.

3. Extradition to the United States is governed by Part 2 of the Extradition Act 2003, as the United States of America has been designated as a category 2 territory pursuant to s.69 of the Act. Under s.78 one of the questions which the judge must consider at the extradition hearing is whether the offence specified in the request is an "extradition offence". If the answer to that question is in the negative, the judge must order the person's discharge.

4. Pursuant to s.137, a person's conduct constitutes an extradition offence if certain conditions are satisfied. One of these conditions, set out in (3)(b), is that:

   > "The conduct would constitute an offence under the law of the relevant part of the United Kingdom punishable with imprisonment or another form of detention for a term of 12 months or a greater punishment if it occurred in that part of the United Kingdom."

5. It is that condition, often referred to as the "dual criminality rule", which the District Judge held is not satisfied in this case. The rationale of the dual criminality rule, as explained by the House of Lords in *Norris v Government of the United States of America* [2008] UKHL 16, [2008] 1 AC 920, at para 88 is that:

   > "... a person's liberty is not to be restricted as a consequence of offences not recognised as criminal by the requested state..."

   The decision of the House of Lords in that case also establishes that, in applying the test of dual criminality set out in s.137 of the Act, it is necessary to look at the conduct of which the person is accused in the foreign state and to identify the essence of the conduct alleged which, if proved, would give rise to a criminal offence – ignoring for that purpose "mere narrative background" and "adventitious circumstances connected with the conduct of the accused" and focusing on the "substance of the criminality charged" against the person: see paras 91, 97 and 99 of the judgment.

6. It is then necessary to ask whether the conduct, if it had occurred in this country, would constitute a criminal offence under UK law. The important feature of this country's criminal law, for present purposes, is that, while cannabis is a controlled drug which it is unlawful to produce or supply by reason of s.4 of the Misuse of Drugs Act 1971, and while it is also an offence under s.6 of that Act to cultivate any cannabis plant, cannabis seeds are not themselves a controlled drug. It is not an offence under UK law to produce or supply or offer to supply cannabis seeds. As explained by Leveson LJ, as he was, in the case of *R v Jones* [2010] 2 Cr App R 10 at para 1:

   > "The production of the controlled drug cannabis contravenes section 4(1)(a) of the Misuse of Drugs Act 1971 but it is not illegal to offer for sale or supply the paraphernalia associated with smoking cannabis and nor is it illegal to offer for sale or supply the equipment necessary to grow the plant, books which explain how cannabis may be grown or, indeed, cannabis seeds. As a result, there are a number of shops and other outlets which offer these goods for sale but it is obviously very important that these premises do not overstep the line and incite the commission of an offence."

7. The law is different in the United States where, as is explained in an affidavit sworn by the prosecutor Mr Michael Conley in support of the extradition request in this case, the definition of the controlled substance marijuana includes marijuana seeds. The affidavit makes it plain that the conduct of which Mr Nirvana is charged involves trafficking etc in marijuana seeds. Thus, in relation to Count 1 of the indictment, which charges Mr Nirvana with conspiracy to manufacture, distribute or possess with intent to distribute marijuana, Mr Conley states at para 32 of his affidavit:

   > "The government's evidence will establish that Nirvana ran a marijuana seed distribution business based out of London."

   He goes on to say:

   > "The evidence will show that Nirvana was involved in every step of the marijuana seed sale process from dealing with US marijuana seed growers, to auctioning the seeds online, to distributing the seeds to US customers and to ensuring the marijuana seed growers receive the requisite payment.
   >
   > This will be shown at trial by the testimony of numerous cooperating witnesses who manufactured marijuana seeds in Maine and shipped the seeds to London to be sold on Nirvana's website."

8. The affidavit then explains that Count 2 charges Mr Nirvana with conspiracy to import marijuana into the United States. In relation to that Count Mr Conley states:

   > "The government's evidence will establish that Nirvana worked with others to send marijuana seeds to customers worldwide. Many of these customers were in the United States."

9. Count 3 charges Mr Nirvana with conspiracy to export marijuana from the United States. In relation to that Count, Mr Conley says:

> "The government's evidence will establish that Nirvana worked with marijuana growers in the United States to have marijuana seeds produced in the United States and then shipped to London to be sold on Nirvana's website. This will be shown at trial by the testimony of three cooperating witnesses who manufactured marijuana seeds in Maine and then personally shipped the seeds to London to be sold on Nirvana's website."

10. Count 4 charges Mr Nirvana with conspiracy to commit money laundering offences. All those alleged offences relate to the processing of money orders and other transactions that allegedly represented money from US based marijuana seed customers. It was common ground at the extradition hearing, and remains so on this appeal, that Count 4 stands or falls with Counts 1 to 3 on the indictment.

11. It is clear from this evidence that the essence of the conduct alleged by the United States, and which if proved would make Mr Nirvana guilty of the offences charged, consists of dealing in marijuana seeds. His case, which the District Judge accepted, is that that conduct, if it had been committed in the United Kingdom, would not constitute any offence under UK law.

12. The argument which has been ably advanced by Mr Hall QC on behalf the United States on this appeal focuses on one aspect of the alleged conduct. That is the relationship between Mr Nirvana and the suppliers in the United States who allegedly supplied him with marijuana seeds. The extradition request contains allegations that Mr Nirvana regularly purchased seeds from certain suppliers in the United States, in some cases in the course of relationships which lasted several years. In particular, the United States relies in this regard on evidence which is referred to in a supplemental affidavit made by Mr Conley. This affidavit summarises evidence which three cooperating witnesses are expected to give in the United States criminal proceedings. Each of those cooperating witnesses is someone who allegedly supplied marijuana seeds to Mr Nirvana over a number of years and received regular payments for such supplies of marijuana seeds.

13. In relation to the third cooperating witness, the affidavit refers to various email messages exchanged between the witness and Mr Nirvana. Two of those messages are ones on which Mr Hall QC has particularly relied. One is an email sent at the end of a chain of emails in which Mr Nirvana was allegedly discussing with a supplier delay in the processing of payments. In this email Mr Nirvana referred to:

> "making breeders [that is to say his suppliers who grow marijuana plants] mad because we can't pay them..."

The other message on which Mr Hall particularly relied is one said to have been sent on 26 January 2011 by the cooperating witness to Mr Nirvana in which the witness said:

> "I am looking VERY forward for you guys to shoot me that current stock inventory you told me you'd be doing, and Gypsy, the breakdown of what I'm currently owed, cash wise, after almost a year...I have a big harvest in 10 days and then a GIANT Kush Projects seed run is in Proper Order and ready to go! More sour d seeds soon too who'd know that $80,000 retail in SD seeds would be gone in <3 hours. Underestimated THAT market DOH!"

14. It is submitted on behalf of the United States that this alleged conduct demonstrates or evidences agreements between Mr Nirvana and suppliers in the United States to cultivate cannabis plants which – if the facts are transposed such that the conduct occurring in the United States had occurred in this country – would amount to an offence under s.6 of the Misuse of Drugs Act, to which I earlier referred. It is further or alternatively said that the same conduct would constitute, in so far as it occurred after 1 October 2008 when the Serious Crime Act 2007 came into force, an offence of intentionally encouraging or assisting an offence under s.44 of that Act. Section 44(1) provides:

> "A person commits an offence if—
>
> (a) he does an act capable of encouraging or assisting the commission of an offence; and
>
> (b) he intends to encourage or assist its commission."

It is submitted that in this case the acts alleged by the United States amount to acts on the part of Mr Nirvana capable of encouraging or assisting in the commission of what in the UK would be an offence of cultivating cannabis plants and demonstrate the necessary intention to encourage or assist in the commission of such an offence.

15. In my view, that case advanced on behalf of the appellant is not sustainable for two reasons. First of all, as I have already indicated, the essence of the conduct alleged by the United States' prosecutor is dealing in cannabis seeds. It is not the cultivation of cannabis plants. Thus, the substance of the criminality charged in Count 3 of the indictment is exporting cannabis seeds from the United States. It is not cultivating cannabis plants or conspiring to cultivate plants in order to produce seeds for the purposes of export. The same applies a fortiori to the other counts on the indictment.

16. Accordingly, since the essence of the conduct alleged is trafficking in, importing and exporting cannabis seeds, and since that conduct does not amount to an offence under UK law if it occurs in the United Kingdom, the dual criminality test as expounded by the House of Lords in the case of *Norris* is not satisfied. For that reason, the appeal must fail.

17. Secondly, the defect in the appellant's case, in my view, goes even further than that. Even if one takes the whole of the conduct alleged, including evidence about communications with Mr Nirvana and his suppliers which might really be said to be part of the narrative history and does not disclose the essence of the conduct alleged – even if one considers the whole of the conduct, I cannot see that, if the relevant events had occurred in the United Kingdom, the facts alleged would constitute either of the offences relied on by the appellant.

18. In particular, the high point of the appellant's case appeared to be the email correspondence to which I referred earlier. It does not seem to me that that email correspondence shows anything more than communications taking place of the kind which one might expect to see between a customer and a regular supplier about arrangements for supply and payment in return for supply and so forth. Nowhere in the emails referred to in the appellant's evidence is there any communication from Mr Nirvana which might be construed – let alone which would necessarily be construed – as an agreement with the supplier for the cultivation of cannabis plants or as an act intended to assist or encourage the cultivation of such plants.

19. As for the reference in the evidence relating to Count 3 of the indictment, on which Mr Hall also placed considerable reliance, to Mr Nirvana "working with marijuana growers in the United States to have marijuana seeds produced in the United States and then shipped to London", when read in the context of the evidence as a whole I do not understand that allegation as going beyond an assertion that Mr Nirvana had an ongoing relationship with persons in the United States from whom he regularly purchased marijuana seeds.

20. I therefore do not consider that, even taken at its highest, the conduct alleged by the United States, if it had occurred in this country, would constitute a criminal offence. At all events, on no reasonable view of the matter can it be said that the essence of the conduct alleged amounts to an offence of conspiring to cultivate cannabis plants or an offence of assisting or encouraging the cultivation of cannabis plants. For those reasons, the dual criminality test is not satisfied.

21. These are not technical points. What they show is that the conduct with which Mr Nirvana would be charged, if he were prosecuted in the United States, is conduct which did not constitute a criminal offence in the place where the conduct in fact occurred. It is an important principle of extradition law that a person is not to be extradited in such circumstances. Accordingly, I would dismiss the appeal.

**MR JUSTICE HOLGATE:**

22. I agree.

---

**BAILII:** Copyright Policy | Disclaimers | Privacy Policy | Feedback | Donate to BAILII
URL: *http://www.bailii.org/ew/cases/EWHC/Admin/2018/706.html*